UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

A.B.A. FIRE EQUIPMENT, INC.,[1]                    Case No. 11-35796-AJC
A-1 FIRE EQUIPMENT, CORP.,[2]                      Case No. 11-35798-AJC
                                                   Chapter 11
              Debtors.                             Jointly Administered
_____/

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING
COMPETITIVE BIDDING AND SALE PROCEDURES; (II) APPROVING
FORM AND MANNER OF NOTICES; (III) SCHEDULING DATES TO CONDUCT
AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE,
INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (IV) AUTHORIZING SALE OF SUBSTANTIALLY ALL
THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS;  AND (V) GRANTING RELATED RELIEF**

*** Request for Expedited Hearing to Consider Bid Procedures Only ***
On or Before December 28, 2011

Basis for Requested Emergency Hearing

The Debtors submit that a preliminary hearing on this Sale
Procedures Motion is necessary in order to approve the bidding
procedures described herein and that such approval is needed on
an expedited basis.  Based upon the Debtors' projected cash
requirements, it is in the best interests of the Debtors' estates to
expedite a sale process which will result in a closing by January
31, 2012.  If a closing cannot be expedited, the Debtors are at risk
of falling short of their ability to meet their administrative
expenses and the value of the Debtors' assets will be
compromised.  Of equal importance, the Proposed Purchaser has
advised the Debtors that the Stalking Horse Bid is subject to a
closing to occur on or before January 31, 2012. The Debtors have
been actively marketing their assets and working with potential

---

[1]The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.  The Debtor's EIN is 59-1596625.
[2]The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.  The Debtor's EIN is 59-1590636.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

**bidders who the Debtors believe are prepared to work within the proposed timeline.**

A.B.A. Fire Equipment, Inc. and A-1 Fire Equipment, Corp. (each a "*Debtor*" and collectively, the "*Debtors*"), by and through undersigned counsel, moves this Court pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014, and Local Rules 2002-1(C)(2) and 6004-1(A), for entry of an order (I) Approving Competitive Bidding and Sale Procedures; (II) Approving Form and Manner of Notices; (III) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (IV) Authorizing Sale of Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (V) Granting Related Relief (the "*Sale Procedures Motion*").   In support of the Sale Procedures Motion, the Debtors respectfully submit as follows:

### LOCAL BANKRUPTCY RULE 6004-1 CONCISE STATEMENT

In accordance with Local Bankruptcy Rule 6004-1, below is a summary of the nature of the Debtors' request:

- Identity of the Purchaser. Because the sale is subject to higher and better offers, the identity of the purchaser is currently unknown. However, the Proposed Purchaser (defined below) is MGC Systems Corp., in Trust ("*MGC*" or the "*Proposed Purchaser*") who has executed a Letter of Intent (as defined below) with the Debtors for the purchase of the substantially all of the Debtors' assets.

- The Sale Terms.

  o The Sale Price: to be calculated according to certain formulas set forth in the Letter of Intent based on the value of net accounts receivable, inventory and certain other assets at the time of closing; currently estimated to be approximately $1,200,000, but could fall within the range of $900,000.00 to $1,530,000.00.

  o Closing Date: Tenth Day following entry of the Sale Order (as defined below).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

- o Closing Conditions: Entry of the Sale Order; and the successful negotiation of a lease and non-disturbance agreement for a minimum of one year from the Closing Date for the property from which the Debtors operate.

- The Auction Terms.

  - o Proposed Auction Date: January 18, 2012
  - o Proposed Bid Deadline: January 17, 2012
  - o Minimum Incremental Bid: $50,000.
  - o Initial Overbid Amount: $50,000 plus break-up fee.

- Requirements of Competing Bidders

  - o Minimum Deposit: $150,000.00
  - o Documentation Requirements: Financial ability to consummate transaction in sole and absolute discretion of the Debtors; satisfactory Asset Purchase Agreement

- Purchaser Protections Not Otherwise Described.

  - o Proposed Break-up Fee: $65,000

- Identity of All Known Lienholders. JPMorgan Chase Bank, N.A. ("*Chase*"); Internal Revenue Service; State of Florida Department of Revenue.

- Statement Requesting Dates for Hearings and Auction. The Debtors are not seeking expedited relief in connection with the Sale. The Debtors propose an auction on January 18, 2012 and a Sale Hearing on January 19, 2012

## I.   JURISDICTION

1.      This Court has jurisdiction over the Sale Procedures Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of the Sale Procedures Motion is proper under 28 U.S.C. § 1408 and 1409.

2.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 363 and 365 of 11 U.S.C. § 101 *et seq.* (the "*Bankruptcy Code*"), Rules 2002, 6004(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Local Rule 6004-1.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

## II.    BACKGROUND

3.      On September 19, 2011 (the "*Petition Date*"), the Debtors filed voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to manage and operate their business as debtors in possession

pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

5.      The Debtors are Florida corporations that own and operate a closely-held business in

the fire protection and electric services industry.  The Debtors have been doing business throughout

the state of Florida since the mid-1970's, providing a myriad of fire protection-related products and

services to their customers including the following: (i) distribution and installation of fire alarm

systems; (ii) 24/7 monitoring and all necessary inspection and service for all major brands of fire

alarm systems; (ii) inspection and service of automatic fire suppression systems and fire

extinguishers; (iii) inspection and service of fire sprinkler systems and emergency generators;

(iv) distribution, installation and service of all major brands of emergency & exit lights and

smoke/duct detectors; and (v) fire alarm runner services, as required by existing Miami-Dade

County municipal code requirements.  In addition, the Debtors provide fully-licensed electrical

contracting services, available 24 hours a day, 7 days a week.

6.      The Debtors are closely-held corporations, whose officers and directors are Earl

Spiegel ("*Speigel*"), Howard Pearson ("*Pearson*"), Randy Meland ("*Meland*") and Everett David

Price, III ("*Price,*" and collectively with Spiegel, Pearson and Meland, the "*Officers*").  All of the

issued and outstanding shares of the Debtors are owned by the Officers and three passive Canadian

investors.  Henry Schnurbach, a principal of the Proposed Purchaser, is related through marriage to

Pearson.

7.      The Debtors primary offices and operations are located at 3619 NW 2 Ave, Miami, FL 33127 and 3634 NW 2 Ave, Miami, FL 33127, which properties are owned by Spearland Holdings, Inc. ("*Spearland*") and RHE Holdings, LLC ("*RHE*"), respectively, and leased to the Debtors pursuant to certain lease agreements (the "*Lease Agreements*").   Both Spearland and RHE are wholly-owned by Spiegel and Pearson, and have no independent business operations or assets other than the real property owned by each entity.

### III.    PREPETITION SECURED INDEBTEDNESS

8.      A.B.A. Fire Equipment, Inc. ("*ABA*"), as borrower, and A-1 Fire Equipment, Corp. ("*A-1*") and the Officers, as guarantors, are parties to a senior secured credit facility (the "*Prepetition Senior Secured Facility*") provided by JPMorgan Chase Bank, N.A. ("*Chase*") pursuant to that certain Business Loan Agreement, dated as of March 2, 2010 (the "*Loan Agreement*"), consisting of (a) a $900,000.00 senior credit facility (the "*Senior Secured Revolver*"), and (b) a $600,000.00 senior secured term loan (the "*Senior Secured Term Loan*") (collectively, with the First Lien Revolver, the "*Prepetition Senior Secured Loans*").   The Prepetition Senior Secured Loans are secured by first priority liens and security interests on substantially all of the Debtors' assets pursuant to a Commercial Security Agreement dated March 2, 2010 between Chase and ABA (the "*Security Agreement*").

9.      Spearland, as borrower, and the Debtors and Officers, as guarantors, are parties to a senior secured credit facility provided by Chase pursuant to that certain Business Loan Agreement, dated as of March 18, 2010 consisting of a $400,000.00 senior credit facility (the "*Spearland Senior Secured Facility*").   The Spearland Senior Secured Facility is secured by a first priority mortgage on the real property owned by Spearland (the "*Spearland Mortgage*").

10.     RHE, as borrower, and the Debtors and Officers, as guarantors, are parties to a senior secured credit facility provided by Chase pursuant to that certain Business Loan Agreement, dated as of March 18, 2010 consisting of an $800,000.00 senior credit facility (the "*RHE Senior Secured Facility*"). The RHE Senior Secured Facility is secured by a first priority mortgage on the real property owned by RHE (the "*RHE Mortgage*").

11.     Pursuant to the Security Agreement, the Prepetition Senior Secured Facility, the Spearland Senior Secured Facility and the RHE Senior Secured Facility (the "*Prepetition Senior Secured Obligations*") are all cross-collateralized and cross-defaulted.

12.     As of the Petition Date, the Debtors were indebted to Chase as follows: (i) in the approximate amount of $1,352,478.86 on account of the Prepetition Senior Secured Facility; (ii) in the approximate amount of $390,186.99 on account of their guarantee of the Spearland Senior Secured Facility; and (iii) in the approximate amount of $781,144.59 on account of their guarantee of the RHE Senior Secured Facility.

## IV.    RECENT MARKETING EFFORTS

13.     Since approximately May of 2009, the Debtors have been marketing their business and assets for sale, in conjunction with continued efforts to address the restructuring or recapitalization of their business operations following the downturn in the economy and corresponding decline in the construction market. Indeed, the Debtors have engaged in meaningful discussions and an exchange of substantial diligence and related information with 3 potential interested parties, all of which are strategic buyers operating within the Debtors' industry or a related industry. While discussions are still ongoing with all three (3) parties, MGC has submitted a

bid for the Debtors' assets and has indicated its willingness to move forward as the stalking horse bidder.

## IV.   THE LETTER OF INTENT AND PROPOSED SALE

14.     On or about December 4, 2011, the Debtors entered into that certain Letter of Intent (the "*LOI*") with MGC for the sale (the "*Sale*") of substantially all of the Debtors' assets as described in the LOI (collectively, the "*Purchased Assets*") free and clear of all liens, claims and encumbrances. A copy of the LOI is attached hereto as Exhibit A.

15.     The LOI provides that MGC will serve as the stalking horse bidder for the purchase of the Purchased Assets, in an amount equal to the formula set forth in the LOI, which formula is based on the value of net accounts receivable, inventory and certain other assets at the time of closing. The Debtors currently estimate that the ultimate purchase price that will result from such formula, based on available information and the Debtors' projections, and assuming a Closing Date on or about January 31, 2012, is approximately $1,200,000.00. However, the Debtors estimate that the Purchase Price under the Letter to Intent could ultimately fall anywhere within the range of $900,000.00 to $1,530,000.00 (the "*Purchase Price*").

16.     As noted above, the Purchased Assets serve as collateral for the claims of Chase. As a result, the Purchase Price will be set aside (following the payment of the Break-up Fee (as defined below) and the repayment of any amounts due to MGC in connection with the postpetition financing that may be provided by MGC prior to the Sale) pending the approval of a resolution reached between the Trustee and Chase.

17.     The LOI contemplates that MGC's offer will be subject to higher and better offers as described therein, and that competitive bidding will be conducted at an auction with an initial

overbid requirement of $50,000.00 of the Purchase Price, and bidding increments thereafter of $50,000.00 (or as otherwise determined by the Debtors at the auction of the Purchased Assets).

18.     Moreover, pages 4-5 of the Letter of Intent provide for the payment of a break-up fee (the *"Break-Up Fee")* in the amount of $65,000.00 (to be paid from the Purchase Price within ten business days after the Closing Date (as defined below)) if MGC is not the successful bidder at the auction.

19.     To the extent that any secured creditors of the Debtors possess any perfected liens upon any of the Purchased Assets to be sold, such liens will attach to the proceeds of the sale, pursuant to 11 U.S.C. §363. Unless otherwise provided by order of the Court, the Debtors reserve the right to object to (a) the validity, priority, and extent of any security interests asserted by any entity on the Purchased Assets, and (b) the alleged amount due and owing to such entities

## V.     SUMMARY OF RELIEF REQUESTED

20.     By this Sale Procedures Motion, the Debtors seek approval of a sale process through which it proposes to sell all or substantially all of its assets free and clear of liens, claims and encumbrances in accordance with section 363 of the Bankruptcy Code. Specifically, the Debtors seek entry of an order (the *"Bid Procedures Order"*) ,[3] following a preliminary hearing (the *"Bid Procedures Hearing"*), (i) approving the bidding procedures as set forth herein and as detailed in the proposed form of notice attached as Exhibit 1 to the Bidding Procedures Order (the *"Bidding Procedures"*) for additional bidding on the Purchased Assets, (ii) approving the form and manner of notice of the Bidding Procedures and the proposed sale, and (iii) scheduling a Sale Hearing (as

---

[3] A copy of the Bidding Procedures Order is attached hereto as Exhibit B, and a copy of the Bidding Procedures is attached to the Bidding Procedures Order as Exhibit 1.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

defined below) to approve the Sale to the Proposed Purchaser or the Prevailing Bidder (as defined in the Bidding Procedures).

21.     The Debtors intend to consummate the Sale as promptly as possible, consistent with (i) the due process requirements of sections 363 and 365 of the Bankruptcy Code, and (ii) the sale process under the Bidding Procedures.  By this Sale Procedures Motion, the Debtors seek approval and implementation of a three-step sales process as follows:

a)     a "Bid Procedures hearing" at which the Debtors will seek approval of the Bidding Procedures, as described below;

b)     an "Auction" to be conducted in accordance with the Bidding Procedures, following a confirmatory due diligence period for other interested parties, assuming one or more "Qualified Bids" are timely received as provided in the Bidding Procedures.  The Debtors propose to conduct the Auction on January 18, 2012; and

c)     a "Sale Hearing" proposed to be held on January 19, 2012, or the earliest opportunity after the conclusion of the Auction, at which time the Debtors will seek entry of an order (i) authorizing the Sale, (ii) approving procedures and rights related to the assumption and assignment of certain executory contracts and unexpired leases and (iii) granting related relief (the "*Sale Order*").

22.     The Debtors expect to be able to meet their burden at the Bid Procedures Hearing and the Sale Hearing of demonstrating that the sale efforts to date have been handled with diligence and substantial effort, resulting in exposing the Debtors' assets to a comprehensive and competitive sale process.  As such, the proposed time frame will appropriately balance the Debtors' objective

need to conclude the sale as soon as possible with the need to thoroughly market the assets and properly negotiate a transaction.

## VI.    RELIEF REQUESTED

### A.    The Bidding Procedures

23.    In order to ensure that the Debtors' estates are able to derive maximum value from the Purchased Assets, the LOI is expressly subject to higher and better offers for the Purchased Assets, as provided in the Bidding Procedures. The Debtors seek to adopt procedures that will foster continued competitive bidding among potential buyers without eliminating or discouraging any qualified bids, including the present "stalking horse" bid by MGC embodied in the LOI.

24.    The Debtors believe that the proposed Bidding Procedures constitute the best method of maximizing the value of the Purchased Assets through the continuation of a competitive sale process that will allow for the solicitation and submission of competitive bids (as set forth in the Bidding Procedures, a competitive bid submitted in accordance with these procedures shall be deemed a "*Qualified Bid*" and such bidder shall constitute a "*Qualified Bidder*"). Accordingly, the Debtors request that the Court enter the Bidding Procedures Order authorizing the Debtors to implement the Bidding Procedures and schedule the Auction as more fully set forth in the Bidding Procedures.

25.    To be considered a Qualified Bid, each bid submitted must comply with the following requirements:

        a)    A bid must be on terms that, in the Debtors' business judgment, are substantially the same or better than the terms of the Sale set forth in the LOI. A bid must

include, at a minimum, an executed LOI pursuant to which the bidder proposes to effectuate a competing transaction (each, a *"Competing Transaction"*).

b)      A bid must propose a Competing Transaction involving substantially all of the Debtors' assets or operations. A bid must propose a purchase price that the Debtors believe, in the exercise of their reasonable business judgment, is equal to or greater than (i) the Stalking Horse Bid, as such bid will be valued in accordance with the formula set forth in the LOI as of the Bidding Deadline; plus (ii) the Break-up Fee and the Initial Overbid Amount.

c)      A bid will not be considered as a Qualified Bid if (i) such bid contains additional representations and warranties, covenants, closing conditions, termination rights other than as may be included in the LOI, (ii) such bid is not received in writing on or prior to the Bid Deadline (as defined in the Bidding Procedures), and (iii) such bid does not contain evidence that the party submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby. The Competing Transaction documents shall also identify any executory contracts and unexpired leases of the Debtors that the bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction.

d)      Each bid must be accompanied by a deposit in the amount of not less than $150,000.00 to an interest bearing escrow account to be identified and established by the Debtors (the *"Good Faith Deposit"*);

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

e)      Each bidder must provide evidence reasonably satisfactory to the Debtors demonstrating the bidder's financial ability to close and to consummate a Competing Transaction, including, without limitation, evidence of the bidder's ability to provide adequate assurance of future performance under any unexpired leases and executory contracts pursuant to Section 365 of the Bankruptcy Code;

26.      The Bidding Procedures also contain the following relevant terms:

a)      Subject to this Court's approval of the Sale Procedures Motion, the Auction shall take place on January 18, 2012 at 10:00 a.m. (prevailing Eastern Time) at the offices of Meland, Russin & Budwick, P.A., 200 South Biscayne Boulevard, Suite 3000, Miami, Florida 33131, or such other place and time as the Debtors shall notify all Qualified Bidders, including the Proposed Purchaser, counsel for the Proposed Purchaser and other invitees.

b)      The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the "***Auction Baseline Bid***").

c)      An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. Any Overbid after the Auction Baseline Bid shall be made in increments valued at not less than $50,000. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include cash and/or noncash consideration.

d)      The Auction will continue until there is only one Qualified Bid that the Debtors determine, in their reasonable business judgment, after consultation with their

financial and legal advisors, is the highest and best Qualified Bid at the Auction (the bidder submitting such bid, the "***Prevailing Bidder***"). The party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their business judgment, will be designated as the potential backup bidder (the "***Potential Backup Bidder***"). In the event that a Qualified Bidder is identified by the Debtors as the Potential Backup Bidder, such party shall be required to serve as the backup bidder (the "***Backup Bidder***"); provided, however, that the Proposed Purchaser is not required to be a Backup Bidder.

e)    The Backup Bidder shall be required to keep its initial bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "***Backup Bid***") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is fifteen (15) days after the date of the Sale Hearing (the "***Outside Backup Date***") or the closing of the transaction with the Prevailing Bidder.

f)    Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtors may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Prevailing Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Prevailing Bidder. The deposit of the Backup Bidder shall be held by the Debtors until the earlier of 24 hours after

(i) the closing of the transaction with the Prevailing Bidder and (ii) the Outside Backup Date.

Except as otherwise provided in the LOI or the Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, after consultation with their legal advisors, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some or all of the Purchased Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Bidding Procedures Motion at any time with or without prejudice.

**B. Sale of Assets**

27.    This Court has the statutory authority to authorize the sale free and clear of liens. Pursuant to section 363(f) of the Bankruptcy Code, a trustee or debtor in possession may sell all or any part of property of the estate, free and clear of any and all liens, claims, encumbrances or interests if:

> (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in a bona fide dispute, or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest;

11 U.S.C. § 363(f); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections is met).

28.    Property of the estate may be sold outside the ordinary course of business. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of the debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (D. Del. 1987); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998); *WBQ P'Ship v. Virginia*, 189 B.R. 97 (Bankr. E.D. Va. 1995). Here, each of those factors is met.

29.    Subject to the terms and conditions of the LOI, the Debtors, in the sound exercise of their business judgment, have concluded that consummation of the Sale to the Proposed Purchaser

(or to the highest and best bidder) will best maximize the value of the Debtors' estate for the benefit of the Debtors' creditors.

30.     To date, the purchase price offered by the Proposed Purchsaer is the highest and best offer for the Purchased Assets. In order to ensure the highest possible recovery for the Debtors' estates, the Debtors have required that their obligation to proceed under the LOI be subject to the receipt of higher and better offers through a competitive Auction of the Purchased Assets, as set forth herein. Accordingly, the Debtors respectfully assert that ample business justification exists for the Sale.

31.     In addition, the Break Up Fee is designed to lock in the minimum bid price and to compensate the Proposed Purchaser for costs it has incurred in connection with the LOI and will incur in connection with the asset purchase agreement should the Proposed Purchaser fail to be the winning bidder at the Auction. A break up fee is appropriate both to attract additional, serious bids and to ensure that the original bidder does not retract its bid. *See In re APP Plus, Inc.*, 223 B.R. 870 (Bkrtcy. E.D.N.Y.); *In re S.N.A. Nut Company*, 186 B.R. 98 (Bkrtcy. N.D. Ill. 1995).

32.     As noted above, the Debtors propose to sell the Purchased Assets free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code with all such liens, claims, and encumbrances attaching to the sale proceeds. In the instant case, the alleged secured claim of Chase may not be fully-satisfied by the sale of the Purchased Assets. Chase's claim relating to the Purchased Assets is in excess of $1,350,000,[4] but the Purchased Assets (which

---

[4] Chase has filed a proof of claim in the Debtors' chapter 11 cases in the total amount of $2,611,708.87. However, such claim includes amounts due to Chase in connection with the Spearland Senior Secured Facility and the RHE Senior Secured Facility (collectively, the "*Non-Debtor Facilities*") . Although the Purchased Assets serve as additional security for the Non-Debtor Facilities, the Non-Debtor Facilities are secured in the first instance by real property owned

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

serve as collateral for Chase's secured claim) are potentially being sold for an amount that may by

less than that (depending on application of the formula set forth in the LOI and whether Competing

Bids are submitted). Accordingly, the Debtors propose to sell the Purchased Assets to the highest

and best qualified bidder pursuant to Section 363(f)(2) and (4), which provide:

> (f)      The Trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if –
>
>      (2)      such entity consents;
>
>      (4)      such interest is a bona fide dispute;

33.      Pursuant to Section 363(f)(4), a "bona fide dispute exists when there is an objective

basis for either factual or legal dispute as to the validity of an interest in property." *See In re*

*Robotics Vision System, Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005). In deciding whether a bona-

fide dispute exists, the court does not need to determine the outcome of such dispute, but only

whether one exists. *Id.* In addition, the purpose of Section 363(f)(4) is to permit a bankruptcy

estate to sell property "free and clear of interests that are disputed by the representative of the estate

so that liquidation of the estate's assets need not be delayed while such disputes are being litigated."

*See In re Clark*, 266 B.R. 163, 171 (9th Cir. BAP 2001); *see also In re Oneida Lake Development,*

*Inc.*, 114 B.R. 352, 357 (Bankr. N.D.N.Y. 1990) (allegations are sufficient to raise a bona fide

dispute over the avoidability of a lien where a sale needed to be concluded before an evidentiary

hearing could take place).

---

by Spearland and RHE (two non-debtor entities) which properties are not included in the Purchased Assets. As such,
the amount due to Chase relative to the Purchased Assets is approximately $1,352,478.86.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

34.     To the extent that any secured creditors of the Debtors possess any perfected liens upon any of the Purchased Assets to be sold, such liens will attach to the proceeds of the sale, pursuant to 11 U.S.C. §363. Unless otherwise provided by order of the Court, the Debtors reserve the right to object to (a) the validity, priority, and extent of any security interests asserted by any entity on the Purchased Assets, and (b) the alleged amount due and owing to such entities

35.     Although a global resolution of Chase's claim has not yet been achieved, the Debtors have been informed that Chase consents to the LOI and the proposed sale process set forth herein.

36.     Finally, the Proposed Purchaser and the Debtors have negotiated the LOI and the transactions contemplated thereby in good faith. As such, the Debtors request that the Sale Order find that the Proposed Purchaser is a good-faith purchaser entitled to the protections of 11 U.S.C. § 363(m). The Debtors further request that, after the Sale Hearing and provided that the Debtors do not deem any other Qualified Bids to be higher or better than the Qualified Bid of the Proposed Purchaser, this Court enter the Sale Order authorizing and approving the Debtors to enter into and consummate an asset purchase agreement consistent with the terms and conditions of the LOI. Lastly, given the Debtors' and the Proposed Purchaser's interest in proceeding expeditiously, the Debtors request that the Court waive the ten-day stay of the effectiveness of the Sale Order consistent with Rule 6004(g) of the Federal Rules of Bankruptcy Procedure.

## C.  The Sale Hearing and Manner of Notice

37.     Subject to Court approval, the Sale Hearing shall be held before the Court on January 19, 2012 at a time to be set by the Court, or as soon thereafter as counsel and interested parties may be heard.

38.     Objections, if any, to the Sale, or the relief requested in this Sale Procedures Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, 51 S.W. 1st Avenue, Miami, Florida 33401 (or filed electronically via CM/ECF), on or before 2:00 p.m. (prevailing Eastern Time) on January 17, 2012 (the "*Sale Objection Deadline*"); and (d) be served upon (i) counsel to the Debtors, (ii) counsel to MGC, and (iii) the Office of the United States Trustee, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

39.     On or before three (3) business days after entry of the Bidding Procedures Order, the Debtors will cause a notice, substantially in the form attached as Exhibit 1 to the Bidding Procedures Order (the "*Auction and Sale Notice*"), to be sent by first-class mail postage prepaid, to all potential bidders previously identified or otherwise known to the Debtors as well as the Debtors' entire creditor matrix, which includes, but is not limited to, the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the Sale, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any known interest in the relief requested by this Motion; (d) counsel to MGC; (e) counsel to Chase; (f) the United States Attorney's office; (g) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; and (h) all other known creditors and interest holders of Debtors.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

**D.    Procedures for Assumption and Assignment
Of Executory Contracts and Unexpired Leases**

40.    In connection with the Sale, the Auction and the entry of the Sale Order (whether the Prevailing Purchaser is the Proposed Purchaser or another bidder submitting a Qualified Bid), the Debtors request this Court's approval of the following procedures for the assumption and assignment of certain executory contracts and unexpired leases:

a)    On or before January 13, 2011, the Debtors shall serve by first class mail or hand delivery the notice of potential assumption and assignment of the Scheduled Contracts (the "*Cure Notice*"), on all non-Debtor parties to the Scheduled Contracts. The Cure Notice shall identify the Scheduled Contract and provide the cure amount that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (the "*Cure Amounts*").

b)    Unless the non-Debtor party to a Scheduled Contract (i) files an objection (the "*Cure Amount Objection*") to (a) its scheduled Cure Amount, (b) the assumption and assignment to the  Proposed Purchaser of the Scheduled Contracts, or (c) the ability of the Proposed Purchaser to provide adequate assurance of future performance, by the Sale Objection Deadline, and (ii) serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline to the Debtors, counsel for the Debtors, counsel to MGC, and the Office of the United States Trustee, such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtors and shall be forever barred and estopped from objecting to the Cure Amount, and from asserting that (A) any additional amounts are due or defaults exist, (B) any conditions to assumption and assignment must be

satisfied under such Scheduled Contract before it can be assumed and assigned to the Proposed Purchaser, (C) any required consent to assignment has not been given, or (D) the Proposed Purchaser has not provided adequate assurance of future performance.

c)      If the Proposed Purchaser is not the Prevailing Bidder, the non-Debtor parties to the Scheduled Contracts shall have until the Sale Hearing (the "***Adequate Assurance Objection Deadline***") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Prevailing Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "***Adequate Assurance Objection***"); provided, however, that if the Proposed Purchaser is the Prevailing Bidder, all Adequate Assurance Objections must be filed by the Sale Objection Deadline; provided, further, however, that all objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Prevailing Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

d)      In the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder (including the Proposed Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as  reasonably practicable after the closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Proposed Purchaser or other Prevailing Bidder, as applicable, are

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5411/5411-1/01009796.DOC.}

authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Proposed Purchaser) without any further notice to or action, order or approval of the Court.

        e)      Within two (2) business days after the Closing Date, the Debtors will file a complete list of the Scheduled Contracts that were assumed and assigned, as of the Closing Date, to the Proposed Purchaser or to the Successful Bidder, to the extent that the Successful Bidder is not the Proposed Purchaser.

**WHEREFORE**, the Debtors respectfully request entry of an order in the form attached hereto and identified as Exhibit B granting the relief requested herein, and granting such other and further relief as is fair and just.

<div style="margin-left:40%">

s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
Jessica L. Wasserstrom, Esquire
Florida Bar No. 985820
jwasserstrom@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtors in Possession*0

</div>



*Strictly Private & Confidential*

December 2, 2011

Via Email: prussin@melandrussin.com

cc: hpearson@a1fireandelectric.com and espeigel@a1fireandelectric.com

ABA Fire and A1 Fire & Electric Co.
3619 NW 2ND AVE
MIAMI, FL 33127
USA
c/o Meland, Russin, Budwick
Attention: Peter Russin, Partner

Dear Mr. Russin:

**Re:    MGC Systems Corp. Proposed Acquisition of Substantially all Assets of A.B.A. Fire Equipment, Inc. together with those of its subsidiaries and affiliates A-1 Fire Equipment Corp., A-1 Electric Company (collectively, "A-1 ");**

Please accept this letter as a non-binding letter of intent for the acquisition by MGC Systems Corp., in Trust (the "Purchaser") of substantially all of A-1's assets (the "Purchased Assets"). Purchaser proposes to acquire the Purchased Assets, which include, without limitation, all of A-1's right, title and interest in and to the following asset categories, along with certain rights as designated, free and clear of all claims, liens and encumbrances pursuant to Section 363 of the Bankruptcy Code:

- All accounts receivable, net of reserves, deposits or deductions[1];

---

[1] Any deposits received post-petition for work not yet completed shall result in a dollar for dollar credit against the Purchase Price.

---



EXHIBIT A



- All inventory of every kind, wherever situated, including shipped but non-invoiced inventory located at customer sites or otherwise to the extent title has not passed or may be the subject of a reclamation claim or all of A-1's rights in a case where a security interest in favor of A-1 pursuant to the Uniform Commercial Code exists;
- All motor vehicles and other rolling stock;
- All other tangible and intangible personal assets including, but not limited to, furniture, fixtures, equipment, all customer, vendor, distributor and service partner lists, all executed customer contracts and outstanding customer or contract quotes, except those excluded by the Purchaser at the Purchaser's sole discretion[2], computers (including computer software, whether or not proprietary or licensed, which must be fully transferable without restriction), tools and any and all business and government licenses (which must be fully transferable without restriction);
- All intellectual property and intellectual property rights in the A-1 portfolio, including all right, title and interest in and to trade names;
- Goodwill;
- All books and records;
- All stock in any subsidiary companies; and
- All causes of action of any nature, claims and other legal rights.

## Designation Rights

- Purchaser shall have the right to designate which executory contracts and unexpired leases it wishes A-1 to assume and assign under section 365 of the Bankruptcy Code and this offer is directly contingent upon the assumption and assignment of any such designated contracts by final Order of the Bankruptcy Court. Any cure due the counterparty to any assumed contract or unexpired lease shall be the responsibility of A-1. All warranty contracts, to the extent considered executory, shall be deemed rejected. Otherwise, Purchaser is not assuming any obligations of A-1 under any warranty (whether express or implied).

## Purchase Price

All amounts expressed herein are represented in United States dollars. Purchaser projects a purchase price (the **"Purchase Price"**) for the Purchased Assets within an estimated range of $900,000 to $1,530,000 to be paid in cash on Closing, based on the following formulas[3]. On or before seven (7) days

---

[2] *See,* Designation Rights

[3] This purchase price allocation is only for purposes of the LOI. Purchaser reserves its right to designate and allocate the purchase price in its sole and absolute discretion by providing a notice to A-1 within sixty (60) days following closing. The allocation contained herein shall not be probative for any purposes.

**MGC Systems Corp.**

25 Interchange Way | Vaughan (Toronto) ON L4K 5W3 | T 905 660-4655 | F 905 660-4113 | www.mircomgroup.com







before Closing, A-1 shall provide Purchaser with an updated schedule of Accounts Receivable, Deposits and Inventory consistent with the chart below. In consideration of the potential for purchase price adjustments, as described by the Final Purchase Price Calculation, an amount equal to 10% of the Purchase Price shall be held in escrow by counsel for A-1 ("Escrow Agent") pending any adjustment ("Hold Back"):

Net Accounts Receivable (net of reserves, deposits or deductions):

| Accounts Receivable Estimated Value ($) on Closing | Aging | Purchase Rate, subject to written acknowledgement of receivable by Purchaser and potential for collection as represented by A-1. | Estimated Purchase Price |
|---|---|---|---|
| $1,500,000[4] | <90 days | $0.80/$1 | $1,200,000 |
| $0 | >90 days and <180 days | $0.50/$1 | TBD |
| $0 | >180 days | $0.05/$1[5] | TBD |

Inventory (in new and unused condition):

| Inventory Estimated Value at Cost ($) on Closing | Aging | Purchase Rate, based upon A-1's cost and subject to A-1's representation that inventory is usable. | Estimated Purchase Price |
|---|---|---|---|
| $400,000[6] | <90 days | $0.70/$1 | $280,000 |

[4] Estimated total Accounts Receivable at Closing.

[5] Subject to Purchaser's further due diligence, Purchaser will purchase those specific receivables which are aged over 180 days or may be aged over 180 days as of the Closing and identified on Schedule 1 at the rate of $0.30/1. Schedule 1 may be modified on or before the Closing by mutual agreement of the parties.


www.mircom.com


www.secutron.com



| $0 | >90 days and <180 days | $0.40/$1 | TBD |
|----|------------------------|----------|-----|
| $0 | >180 days and <24 months | $0.10 | TBD |

Fixed Assets, Intellectual Property, Goodwill and other assets: $50,000.

### Purchase Price Adjustments

➢ A-1 acknowledges that the ultimate purchase price is contingent upon the value of the Purchased Assets ultimately delivered to Purchaser. On or before thirty (30) days after Closing, Purchaser shall conclude a review of the acquired Accounts Receivable and Inventory for final determination of value and shall provide A-1 with its final calculation of the Purchase Price (the "Final Purchase Price Calculation"). If A-1 disagrees with the Final Purchase Price, it must notify the Purchaser in writing within seven (7) days of receipt of Final Purchase Price Calculation. Any disagreements shall be decided by the Bankruptcy Court.

➢ Immediately after the thirtieth (30) day after closing, if the Final Purchase Price Calculation equals the Purchase Price, then the Escrow Agent shall disburse the Hold Back to A-1. If the Final Purchase Price Calculation is less than the Purchase Price, and no objection is timely asserted by A-I, then the Escrow Agent shall disburse the Hold Back to A-1 or Purchaser, as the case may be, consistent with the Final Purchase Price Allocation. If the Final Purchase Price Calculation is greater than the Purchase Price, the Purchase shall tender the additional amount due to A-1 within ten (10) days from providing the Final Purchase Price Calculation and the Escrow Agent shall disburse the Hold Back to A-1. If the Final Purchase Price Calculation is timely disputed, then the Escrow Agent shall retain the Hold Back until the dispute is resolved by the Bankruptcy Court or between the parties.

### Purchasers Conditions

The following are the Purchaser's conditions which must be satisfied on or before closing:

➢ Assets shall be sold pursuant to Section 363 of the Bankruptcy Code and the Purchased Assets shall be conveyed free and clear of any and all liens, claims or encumbrances of any kind;

➢ Purchaser shall be designated the "stalking horse" bidder in any auction to sell the Purchased Assets. In exchange for "stalking horse" status, Purchaser reserves its right to negotiate bidding procedures which ultimately are acceptable to Purchaser. These procedures as approved by the

---

[6] Estimated value of total Inventory at Closing.

MGC Systems Corp.
25 Interchange Way | Vaughan (Toronto) ON L4K 5W3 | T 905 660-4655 | F 905 660-4113 | www.mircomgroup.com


www.mircom.com


www.secutron.com



Bankruptcy Court must include a breakup fee to Purchaser of $65,000 and bidding protections which will require a minimum overbid of $50,000 (plus break-up fee) and incremental bids thereafter in the amount of $50,000.

➤ The order of the Bankruptcy Court approving the sale shall be in a form acceptable to Purchaser (the "Sale Order") and shall contain, among other things, a finding that Purchaser purchased the Purchased Assets in good faith and shall contain the protections afforded by Section 363(m) of the Bankruptcy Code. The Sale Order shall also immunize Purchaser from any claims of successor liability and shall otherwise enjoin any of A-1's creditors from asserting a claim which arose prior to the closing date against Purchaser. This injunction shall be interpreted broadly and include any claim, whether in contract or tort, that could have been asserted against A-1 by any party, including employees, customers, vendors or otherwise.

➤ As part of the acquisition, Purchaser intends to offer full-time and/or contract employment to Howard Pearson, Earl Spiegel, Randy Meland and David Price, each of whom is believed to be an insider of A-1, and select A-1 staff. The conditions of employment will include provisions related to non-competition and agreement to accept employment on an exclusive and full-time basis for Purchaser at a mutually acceptable remuneration for a mutually agreed term and for indicative purposes consistent with rates and caps currently in place for such staff. Purchaser shall assume and bear no responsibility for termination of all other employees and shall be indemnified from and against any claims from any employees terminated by A-1.

➤ As a condition precedent to Purchaser negotiating the terms of an Asset Purchase Agreement, (and therefore initiating the milestones described under "Indicative Timelines"), Purchaser must reach agreement on the terms of a satisfactory lease agreement and Non-Disturbance Agreement for the full and uninterrupted use for a period of at least one year from the date of closing on the Purchased Assets of the building and facility located at 3619 NW 2nd Avenue, Miami, Florida 33127 and the building and facility located at 3634 NW 2nd Avenue, Miami, Florida 33127 owned by non-debtors RHE Holdings, LLC and Spearland Holdings, LLC (together, "Real Estate Holders"). A-1's lenders and the Real Estate Holders' mortgagees (if different entity, division or affiliated party) must agree to be bound by the lease agreement entered into by the Purchaser and Real Estate Holders and consent to a standard form Non-Disturbance Agreement.

➤ All allowed administrative expenses of A-1 shall be paid in full by A-1, including employee related claims, taxes and trade debt.

➤ A-1 will be responsible for its own transaction fees (legal, accounting, etc) relating to the sale of Purchased Assets.

➤ A-1 shall represent compliance with all WARN Act requirements and shall assume any liability associated with any violations.






> Purchaser's acquisition of the Purchased Assets shall not violate the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act").

Other Terms and Conditions:

### DIP Financing

Upon the acceptance of this letter of intent by A-1 and the Lenders, the Purchaser is prepared to provide a line of credit in an amount up to $200,000 in the form of DIP financing to A-1 on a secured super-priority basis and on other terms and conditions strictly satisfactory to the Purchaser and as approved by the Bankruptcy Court pursuant to section 364 of the Bankruptcy Code.  To the extent Purchaser ultimately provides DIP financing, it shall be entitled to credit bid all amounts due and owing under any DIP loan against the Purchase Price.

### Due Diligence

The Purchaser shall have completed, on terms wholly satisfactory to the Purchaser, a due diligence investigation of such matters and documentation relating to A-1 as Purchaser or its advisors shall, in their sole discretion, consider advisable and which is customary for a transaction of this nature.  Purchaser anticipates completion of due diligence within 14 days from A-1's acceptance of this letter of intent.

### Liabilities

Purchaser shall not assume, and shall be indemnified and held harmless for, any liabilities of A-1. Without limiting the generality of the foregoing, purchase shall not be liable for any contract deposits or claims against A-1. Unless specifically assumed by the Purchaser in writing in a definitive Asset Purchase Agreement, Purchaser shall not be liable for any unexecuted or incomplete contracts, projects or sales and service activities.

### Satisfactory Documentation

The Purchaser's obligations to proceed with the purchase of the Purchased Assets shall also be conditional upon the execution and delivery by Purchaser and A-1 of a mutually acceptable and definitive asset purchase agreement (the **"Purchase Agreement"**).  Satisfaction of this condition also requires the satisfactory completion of all of the schedules to the Purchase Agreement.

### Third Party Consents

The Purchaser shall have received on terms satisfactory to the Purchaser such third party consents as shall be necessary to confirm the Purchaser's ownership on closing of the Purchased Assets including contractual and other rights and benefits, free and clear of any liens, claims and encumbrances.  A-1 and







Its officers will facilitate and procure any and all approvals required to give effect to the transaction contemplated herein

**Indicative Timelines**

The following are the timelines applicable to this letter of intent.

A. **Execution of this Letter of Intent:** This letter of intent must be accepted and executed by A-1 within 10 days of delivery.

B. **Completion of Purchaser's Due Diligence:** The Purchaser shall target completion of its due diligence within 14 days of the execution of this letter of intent.

C. **Completion of the Purchase Agreement and Schedules thereto:** The Purchaser and A-1 shall complete and execute the Purchase Agreement and all of the schedules thereto forthwith upon completion of due diligence conditions. The Purchaser and A-1 agree to proceed promptly and in good faith with respect to negotiations related to the execution of the Purchase Agreement.

D. **Consents:** The Purchase and A-1 shall have until the closing date to obtain all required third party consents.

**Closing Date**

Closing shall take place at the offices of Purchaser's counsel on such date and time as may mutually be agreed to but in any event not later than one month following waiver or satisfaction of each of the Purchaser's Conditions.

**Right to Assign**

A-1 acknowledges and agrees that Purchaser is executing this Letter of Intent as the Purchaser, in Trust. On or before closing Purchaser may direct title to the ultimate Purchaser provided that such ultimate Purchase is related to or affiliated with the Mircom Group of Companies or an entity in which the Mircom Group of Companies maintains a majority interest, whereupon Purchaser shall be released from its obligations hereunder in favor of the ultimate Purchaser.

**Governing Law**

This Letter of Intent shall be governed by the substantive laws (and not the laws of conflicts) of the State of Florida.






This letter of intent is not intended to be a legally binding agreement but only an expression of the intention of the parties to proceed with negotiations in good faith. Please indicate your acceptance of this letter of intent by signing below.

Yours very truly,

**MGC Systems Corp, in Trust.**

Mark Falbo, Executive VP

**Agreed to and accepted the _____ day of December, 2011, on behalf of the undersigned, its Board and its shareholders.**

A.B.A. Fire Equipment, Inc.

Name: Howard Pearson
I have authority to bind the Corporation.

Name: Earl Spiegel
I have authority to bind the Corporation

Name: Randy Meland
I have authority to bind the Corporation.

Name: David Price
I have authority to bind the Corporation

**MGC Systems Corp.**
25 Interchange Way | Vaughan (Toronto) ON L4K 5W3 | T 905 660-4655 | F 905 660-4113 | www.mircomgroup.com

 www.mircom.com      www.secutron.com



## Schedule 1

| | Approximate Amount |
|---|---|
| | 1,125.00 |
| ABBOTT HOUSE CONDO - 7735 | |
| | 3,375.00 |
| ACADEMICA MANAGEMENT | |
| | 22,565.00 |
| ALL SEASONS CONDO-Joblove | |
| | 6,000.00 |
| BILL SEIDLE'S | |
| | 25,096.00 |
| BRIAR WOODS 13841 - CREDIT HOLD | |
| | 6,803.00 |
| CFL PIZZA, LLC | |
| | 52,939.00 |
| F.H. PASCHEN | |
| | 3,666.00 |
| FLORIDA'S PROPERTY MANAGEMENT-CREDIT HOLD | |
| | 24,000.00 |
| GRACE & NAEEM UDDIN INC. | |
| | 10,000.00 |
| J2 ENGINEERING, INC | |
| | 8,000.00 |
| KM-PLAZA CONSTRUCTION SERVICES | |
| | 9,328.00 |
| KW PROPERTY MANAGEMENT | |
| | 27,720.00 |
| MARLBOROUGH HOUSE | |
| | 7,650.00 |
| MOUNT SINAI | |
| | 28,000.00 |
| NEWPORT BEACHSIDE HOTEL | |
| | 5,000.00 |
| PLAZA BAL HARBOR | |
| | 3,000.00 |
| ROYAL BAHAMIAN CONDOMINIUM #1101 | |
| | 35,447.00 |
| ROYAL POINCIANA CONDO 1275 | |
| | 3,452.00 |
| SANDPIPER CONDO-CREDIT HOLD | |
| | 7,195.00 |
| SC MOTA ASSOCIATES LP | |
| | 6,471.00 |
| SHORE CLUB 1901 | |
| | 5,106.00 |
| SOUTH FLORIDA RESTORATION | |
| | 4,232.00 |
| TELGIAN CORPORATION | |
| | 306,170.00 |
| | 91,851.00 |

**MGC Systems Corp.**

25 Interchange Way | Vaughan (Toronto) ON L4K 5W3 | T 905 660-4655 | F 905 660-4113 | www.mircomgroup.com







\303780\1 - # 619357 v1

12/2/11

**MGC Systems Corp.**
25 Interchange Way | Vaughan (Toronto) ON L4K 5W3 | T 905 660-4655 | F 905 660-4113 | www.mircomgroup.com





PROPOSED

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

A.B.A. FIRE EQUIPMENT, INC.,[1]
A-1 FIRE EQUIPMENT, CORP.,[2]

           Debtors.
_____/

Case No. 11-35796-AJC
Case No. 11-35798-AJC
Chapter 11
Jointly Administered

## ORDER (I) APPROVING COMPETITIVE BIDDING AND SALE PROCEDURES; (II) APPROVINGFORM AND MANNER OF NOTICES; (III) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (IV) AUTHORIZING SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (V) GRANTING RELATED RELIEF

**THIS MATTER** came before the court on December _____, 2011 at ____ ____.m., upon

the *Debtors' Motion For Entry of an Order (I) Approving Competitive Bidding and Sale*

*Procedures; (II) Approving Form and Manner of Notices; (III) Scheduling Dates to Conduct*

---

[1] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.   The Debtor's EIN is 59-1596625.
[2] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.   The Debtor's EIN is 59-1590636.

EXHIBIT B

*Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired leases; (IV) Authorizing Sale of Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (V) Granting Related Relief* [ECF No. XX] (the "***Sale Procedures Motion***").  The Court having reviewed the Sale Procedures Motion and having heard the statements of counsel in support of the relief requested in the Sale Procedures Motion at the hearing before the Court (the "***Bid Procedures Hearing***"); and the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. § 1408; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2); (d) notice of the Sale Procedures Motion and the Bid Procedures Hearing was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Sale Procedures Motion and at the Bid Procedures Hearing establish just cause for the relief granted herein.  Accordingly:

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.     The Court has jurisdiction over the Sale Procedures Motion and the transaction contemplated by the LOI pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409;

C.     The statutory bases for the relief requested in the Sale Procedures Motion are (i) sections 105, 363, 364 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §

101 et seq. (the "*Bankruptcy Code*"); (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014; and (iii) Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "*Local Rules*");

D.      Good and sufficient notice of the Sale Procedures Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest;

E.      The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of substantially all of the Debtors' assets (the "*Purchased Assets*"), and the Bidding Procedures to be employed in connection therewith;

F.      The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) set the Sale Hearing and approve the manner of notice of the Motion and the Sale Hearing; and (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "*Assumed Executory Contracts*"), including notice of proposed cure amounts;

G.      The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors, equity holders and other parties in interest; and the Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Sale Procedures Motion is **GRANTED** as set forth herein.

2.      All objections to the Sale Procedures Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled and denied on the merits.

3.      The Bidding Procedures, as detailed in the Sale Procedures Motion and as set forth in the form of notice attached hereto as Exhibit 1, are incorporated herein and approved in their entirety.

4.      As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "*Bid Deadline*") is **January 17, 2012 at 2:00 p.m. (prevailing Eastern Time).**  No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid meets the requirements set forth in the Bidding Procedures.

5.      The Debtors may sell the Purchase Assets and enter into transactions contemplated by the LOI by conducting an Auction in accordance with the Bidding Procedures.

6.      If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on **January 18, 2012 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Meland, Russin & Budwick, P.A., 3000 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131, or such other place and time as the Debtors shall notice all Qualified Bidders, including the Proposed Purchaser, counsel for the Proposed Purchaser and other invitees.  If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtors shall seek Bankruptcy Court approval of the Sale to the Proposed Purchaser in accordance with the LOI.

7.      The Sale Hearing shall be held before the Court on **January 19, 2012 at _____ a.m./p.m. (prevailing Eastern Time).**

8.     Objections, if any, to the sale of the Purchased Assets and the transaction contemplated by the LOI or the relief requested in the Sale Procedures Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, 51 S.W. 1st Avenue, Miami, Florida 33401 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on January 17, 2012 (the "*Sale Objection Deadline*"); and (d) be served upon (i) counsel to the Debtors, (ii) counsel to MGC, and (iii) the Office of the United States Trustee, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

9.     The notice, substantially in the form attached hereto as Exhibit 1 (the "*Auction and Sale Notice*") is approved.

10.    On or before three (3) business days after entry of the Bidding Procedures Order, the Debtors will cause the Auction and Sale Notice to be sent by first-class mail postage prepaid, to all potential bidders previously identified or otherwise known to the Debtors as well as the Debtors' entire creditor matrix, which includes, but is not limited to, the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the Sale, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any known interest in the relief requested by this Motion; (d) counsel to MGC; (e) counsel to Chase; (f) the United States Attorney's office; (g) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; and (h) all other known creditors and interest holders of Debtors.

11.    The notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as Exhibit 2, is approved.

12.    On or before five (5) business days after the entry of the Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor parties to the Scheduled Contracts. The Cure Notice shall identify the Scheduled Contract and provide the cure amount that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (the "*Cure Amounts*").

13.    Unless the non-Debtor party to a Scheduled Contract (i) files an objection (the "*Cure Amount Objection*") to its scheduled Cure Amount, the assumption and assignment to the Proposed Purchaser of the Scheduled Contracts, or the ability of the Proposed Purchaser to provide adequate assurance of future performance by the Sale Objection Deadline, and serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline to the Debtors, counsel for the Debtors, counsel to MGC, and the Office of the United States Trustee, such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtors as well as the proposed assumption and assignment and shall be forever enjoined and barred from seeking an additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Proposed Purchaser (or other Successful Bidder) on account of the assumption and assignment of the Scheduled Contracts. In addition, if no timely Cure Amount Objection is filed, the Proposed Purchase (or other Successful Bidder) shall enjoy all the rights and benefits under all Scheduled Contracts without the necessity of obtaining any party's written consent to the Debtors' assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption

and assignment or to object or contest that the Proposed Purchaser (or other Successful Bidder) has not provided adequate assurance of future performance.

14.     If the Proposed Purchaser is not the Successful Bidder, the non-Debtor parties to the Scheduled Contracts shall have until the Sale Hearing (the "*Adequate Assurance Objection Deadline*") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "*Adequate Assurance Objection*"); provided, however, that if the Proposed Purchaser is the Successful Bidder, all Adequate Assurance Objections must be filed by the Sale Objection Deadline; provided, further, however, that all objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Successful Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

15.     In the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Successful Bidder (including the Proposed Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable after the closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Proposed Purchaser or other Successful Bidder, as applicable, are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Successful Bidder (including the Proposed Purchaser) without any further notice t0o or action, order or approval of the Court.

16.     Notwithstanding the inclusion of an executor contract or unexpired lease on any list of Scheduled Contracts, the Proposed Purchase or other Successful Bidder, as applicable, shall have authority, in its sole discretion, to remove any contract or lease from the list of Scheduled Contracts either (i) five (5) calendar days prior to the Sale Hearing, or (ii) within five (5) business days after the Bankruptcy Court sustains, in whole or in part, such non-Debtor party's Cure Amount Objection or Adequate Assurance Objection; in each such case, the Debtor shall not assume and assign such Scheduled Contract to the party who removed such contract or lease from any list of Scheduled Contracts.

17.     Within two (2) business days after the Closing Date, the Debtors will file a complete list of the Scheduled Contracts that were assumed and assigned, as of the Closing Date, to the Proposed Purchaser or to the Successful Bidder, to the extent that the Successful Bidder is not the Proposed Purchaser.

18.     The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

19.     No party submitting an offer of Bid for the Purchased Assets or a Qualified Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

20.     Except as otherwise provided in the LOI or this Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the

Bankruptcy Code, or (iii) contrary to the best interests of the Debtors' and their estates; (e) remove some or all of the Purchased Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Sale Procedures Motion at any time with or without prejudice. Notwithstanding the foregoing sentence, in the event that the Debtors make material modifications to the Bidding Procedures that are not consented to by the Proposed Purchaser, such material modifications shall permit the Proposed Purchaser to terminate the LOI and withdraw its bid without any liability to the Debtors, their estates or otherwise; *provided, however*, the Debtors may seek a determination from the Court that any such modifications are not material and should not permit the Proposed Purchaser to terminate the LOI in accordance with this paragraph.

21.    To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control. The Debtors' obligations under this Bidding Procedures Order, the provisions of this Bidding Procedures Order and the portions of the LOI pertaining to the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims there under and shall be binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors'

cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code).

22.     To the extent there are any inconsistencies between the terms of this Bidding Procedures Order and the LOI (including any asset purchase agreement or other ancillary documents executed in connection therewith), the terms of this Bidding Procedures Order shall govern.

23.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

24.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Sale Procedures Motion.

26.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

###

**Submitted By:**
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
Proposed Counsel for Debtors in Possession
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:     (305) 358-6363
Telefax:     (305) 358-1221

**Copies Furnished To:**
Peter D. Russin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

A.B.A. FIRE EQUIPMENT, INC.,[1]                    Case No. 11-35796-AJC
A-1 FIRE EQUIPMENT, CORP.,[2]                      Case No. 11-35798-AJC
                                                   Chapter 11
                 Debtors.                          Jointly Administered

_____/

## NOTICE OF BIDDING PROCEDURES
## FOR THE SALE OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On December __, 2011, A.B.A. Fire Equipment, Inc. and A-1 Fire Equipment, Corp. (each a "***Debtor***" and collectively, the "***Debtors***"), filed their motion [ECF No. ___] (the "***Sale Procedures Motion***")[3] for entry of an order (the "***Bidding Procedures Order***"), among other things, (a) approving Bidding Procedures for the sale of substantially all of the assets owned by the Debtors (the "***Purchased Assets***") as described in the Letter of Intent by and between MGC Systems Corp. (the "***Proposed Purchaser***") and the Debtors dated as of December 2, 2011 (the "***LOI***"); (b) approving the form and manner of notice of the auction on the Purchased Assets and the Sale Hearing; (c) approving procedures relating to the assumption and assignment of contracts and leases; and (d) scheduling a sale hearing (the "***Sale Hearing***") to consider the sale of the Purchased Assets and setting objection and bidding deadlines with respect to the sale of the Purchased Assets. The Sale Procedures Motion additionally requests entry of an order (the "***Sale Order***") approving (i) the sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests contemplated by the LOI; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

2.      On December __, 2011, the United States Bankruptcy Court for the Southern District of Florida entered the Bidding Procedures Order [ECF No. ___]. Pursuant to the Bidding Procedures Order, the Bankruptcy Court adopted the Bidding Procedures set forth in this Notice pursuant to which (a) interested parties will have the opportunity to make competing offers to purchase the Purchased Assets, as described below; and (b) the Purchased Assets will ultimately be sold to the bidder submitting the highest and best bid at an Auction (as defined in paragraph __ below) (the "***Sale***"), which highest and best bid must be approved by the Bankruptcy Court.

---

[1] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.  The Debtor's EIN is 59-1596625.
[2] The Debtor's current mailing address is 3619 NW 2 Ave, Miami, FL 33127.  The Debtor's EIN is 59-1590636.
[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures Motion.
{Firm Clients/5411/5411-1/01011399.DOC.}

EXHIBIT 1

3.      Pursuant to the Bidding Procedures Order, the auction for the Purchased Assets (the "*Auction*") shall take place on January 18, 2012 at 10:00 a.m. (prevailing Eastern Time) at the offices of Meland, Russin & Budwick, P.A., 3000 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131. Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures detailed herein, by no later than January 17, 2012 at 2:00 p.m. (prevailing Eastern Time) (the "*Bid Deadline*") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures. Parties interested in receiving information regarding the sale of the Purchased Assets should contact Debtors' counsel, Meland, Russin & Budwick, P.A., 3000 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131, Attn: Jessica L. Wasserstrom, Esq., Telephone No. (305) 358-6363, Facsimile No. (305) 358-1221, e-mail jwasserstrom@melandrussin.com ("*Debtors' Counsel*").

4.      The Sale Hearing to consider approval of the Sale of the Purchased Assets to the Proposed Purchaser or Prevailing Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable A.J. Cristol, United States Bankruptcy Judge, 51 S.W. 1st Avenue, Miami, Florida 33401 on January 19, 2012 at ____ a.m./p.m. (prevailing Eastern Time). The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

5.      Objections, if any, to the sale of the Purchased Assets contemplated by the LOI, or the relief requested in the Sale Procedures Motion (including with respect to cure amounts and adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, 51 S.W. 1st Avenue, Miami, Florida 33401 (the "*Bankruptcy Court*") (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on January 17, 2012, or such earlier date and time as the Debtors may agree and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon: (i) Debtors' counsel; (ii) counsel to the Proposed Purchaser, GrayRobinson, P.A, 1221 Brickell Avenue, Suite 1600, Miami, Florida 33131, Attn: Steven J. Solomon, Esq.; and (iii) the Office of the United States Trustee.

6.      In the event that the Proposed Purchaser is not the Prevailing Bidder at the Auction, the non-Debtor party to any Scheduled Contract(s) will have until the Sale Hearing to object to the Prevailing Bidder's ability to perform under such Scheduled Contract(s).

7.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Sale Procedures Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Sale Procedures Motion, the LOI, and the Bidding Procedures Order may be obtained by written request to Debtors' Counsel. In addition, copies of the aforementioned pleadings may be found on the Pacer's website, http://ecf.flsb.uscourts.gov, and are on file with the Bankruptcy Court.

## BIDDING PROCEDURES

A.    Identification of Potential Bidders.  This Notice of Bidding Procedures is being sent to all persons and entities identified by the Debtors and all other entities or persons having expressed, or otherwise known to have, an interest in acquiring the Purchased Assets, and the wherewithal to consummate such a transaction, and to all creditors and equity holders of the Debtors.  Any other person or entity interested in bidding for the Purchased Assets may obtain a copy of this Notice of Bidding Procedures, together with all attachments hereto, by requesting such information from Debtors' Counsel.

B.    Due Diligence.  Upon a request in writing or by e-mail to Debtors' Counsel by any potential bidder, the Debtors will provide to such potential bidder copies or e-mail transmissions, as appropriate, of the Schedules of Assets and Liabilities and Statements of Financial Affairs prepared and filed by the Debtors in these Chapter 11 cases.  Upon receipt by Debtors' Counsel of evidence reasonably satisfactory to the Debtors that the potential bidder is reasonably likely to be able to consummate the purchase of the Purchased Assets, the Debtors shall make all reasonable efforts to provide a potential bidder with such additional information the potential bidder may request that is in the Debtors' possession on or before the Bid Deadline, as may reasonably be necessary or relevant to the formulation of its bid.

C.    Qualified Bidders.  No bid for the Assets will be considered unless prior to or in conjunction with making such bid, the bidder (who, after complying with the requirements of this paragraph, shall be a *"Qualified Bidder"*) delivers the following items to the Debtors, with a copy to Debtors' Counsel:

  a.    a written irrevocable offer for the purchase of the Purchased Assets and otherwise adopting substantially similar or better terms as the LOI, unless otherwise agreed to by the Debtors pursuant to the terms in Section F below;

  b.    deliver an earnest money deposit to the Debtors of not less than $150,000 (the *"Deposit"*) in cleared funds (either by cashier's check or wire transfer payable to Debtors' Counsel);

  c.    Competing Bids must not be subject to financing, due diligence, or other contingencies not provided for in the LOI and must acknowledge that the sale is "as is/where is, with no representations or warranties whatsoever by the Debtors."

  d.    Satisfactory evidence of its financial ability to timely consummate the sale of the Purchased Assets on the terms of the Competing Bid.

The items detailed in a-d of Section 3 above shall be defined as the *"Competing Bid."*

D.      Time for Submission of Competing Bids.  Any Qualified Bidder that desires to make a Competing Bid to purchase the Purchased Assets shall deliver a copy of its Competing Bid so that it is received not later than Bid Deadline to the following recipients:

Debtors:                A.B.A. Fire Equipment, Inc.
                        A-1 Fire Equipment, Corp.
                        3619 NW 2nd Avenue
                        Miami, FL 33127
                        Attn: Earl Spiegel
                        Tel. No.: (305) 573-8273
                        Fax No.: (305) 573-1569
                        Toll-Free: (800) 383-0477

With Copy to:           Meland Russin & Budwick, P.A.
                        3000 Southeast Financial Center
                        200 South Biscayne Boulevard
                        Miami, FL 33131-2335
                        Attn: Jessica L. Wasserstrom, Esq.
                        Tel. No.: (305) 358-6363
                        Fax No.: (305) 358-1221

E.      The Auction.  A sale of the Purchased Assets shall be by auction conducted by Debtors' Counsel (the *"Auction"*) commencing on January 18, 2012 at 10:00 a.m. at Meland, Russin & Budwick, P.A., 3000 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131. Any Qualified Bidder that has made a Competing Bid consistent with the requirements of Sections C and D above may participate in the Auction. At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the *"Auction Baseline Bid"*). Bidding shall proceed in increments of $50,000 or in an amount to be determined by the Debtors at the Auction. At each level of bidding, the Proposed Purchaser will have the right to acquire the Purchased Assets by matching the Competing Bid.

F.      Selection of Successful Bidder.  The Auction will continue until there is only one Qualified Bid that the Debtors determine, in their reasonable business judgment, after consultation with their legal advisors, is the highest and best Qualified Bid at the Auction (the bidder submitting such bid, the *"Prevailing Bidder"*). The party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their business judgment, will be designated as the potential backup bidder (the *"Potential Backup Bidder"*). In the event that a Qualified Bidder is identified by the Debtors as the Potential Backup Bidder, such party shall be required to serve as the backup bidder (the *"Backup Bidder"*). The Backup Bidder shall be required to keep its initial bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the *"Backup Bid"*) open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is fifteen (15) days after the date of the Sale

Hearing (the "*Outside Backup Date*") or the closing of the transaction with the Prevailing Bidder.

G.    <u>Return or Forfeit of Good Faith Deposits.</u>  A Competing Bidder's Good Faith Deposit shall be promptly returned to <u>such</u> bidder if: (i) prior to making a bid, the bidder advises the Debtors' Counsel in writing that it will not make any bid to purchase the Purchased Assets; (ii) the bidder is determined not to be a Qualified Bidder; or (iii) the bidder is a Qualified Bidder (who has not otherwise forfeited its Good Faith Deposit), but is not a the Prevailing Bidder (as defined above).  However, if such bidder is determined to be the Back-Up Bidder (as defined above), such bidder shall not be entitled to its deposit until the Successful Bidder has closed on the Sale. A bidder shall forfeit the Good Faith Deposit if (i) the bidder withdraws or modifies its bid other than as provided herein before the Debtors select the Successful Bidder; or (ii) the bidder is the Successful Bidder or Back-Up Bidder and (A) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale contemplated by the Competing Bid; (B) breaches the Competing Bid; or (C) fails or refuses to close the sale contemplated by the Competing Bid on or before February 15, 2012.

**DATED** this __ day of December, 2011.

Respectfully submitted,

MELAND RUSSIN & BUDWICK, P.A.
*Counsel for Debtors in Possession*
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

By: <u>s/ Peter D. Russin</u>
        Peter D. Russin, Esquire
        Florida Bar No. 765902
        prussin@melandrussin.com
        Jessica L. Wasserstrom, Esquire
        Florida Bar No. 985820
        jwasserstrom@melandrussin.com